## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Crim. No. 4:23-cr-50-ALM-KPJ-1** |
| | § | |
| **EDUARDO REYES (1),** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## OPINION AND ORDER

Defendant Eduardo Reyes ("Defendant") filed "Defendant's Motion to Revoke the Magistrate's Order for Pretrial Detention (ECF #9) And Motion for De Novo Hearing (Based on New Evidence) and Release Granted" (the "Motion to Reopen Detention") (Dkt. 42). The Government filed a response (Dkt. 48) and Defendant filed a reply (Dkt. 50).[1] On June 26, 2023, the Court held a hearing on the Motion to Reopen Detention (Dkt. 42) and granted the Motion to Reopen Detention (Dkt. 42) to allow Defendant to present new evidence. *See* Dkt. 56. Upon consideration, the Court finds Defendant should remain **DETAINED** pending trial.

## I.     BACKGROUND

On February 16, 2023, Defendant was charged by Complaint with violating 21 U.S.C. § 846 (Conspiracy to Possess with the Intent to Distribute Fentanyl). *See* Dkt. 1. On February 21, 2023, the Court held a detention hearing as to Defendant. *See* Dkt. 7; *see also* Dkt. 43 (transcript

---

[1] Defendant filed the Motion to Reopen Detention (Dkt. 42) on May 22, 2023—eighty-eight days after the Order of Detention Pending Trial (Dkt. 9) was entered on February 23, 2023. Accordingly, the Motion to Reopen Detention (Dkt. 42) is filed beyond the fourteen day time period provided in Federal Rule of Criminal Procedure 59 and would thus not be a timely appeal. Moreover, Defendant's argument is that there is evidence which was unknown to Defendant at the time of the detention hearing, warranting pretrial release. Accordingly, in this Opinion and Order, the Court addresses the merits of Defendant's arguments as to the issue of reopening detention.

of February 21, 2023 hearing). Following the detention hearing, on February 23, 2023, the Court issued an Order of Detention Pending Trial (the "Detention Order") (Dkt. 9) finding Defendant should be detained pending trial. The Court recounts below the relevant portions of the Detention Order (Dkt. 9).

Detective Prudencio Solis ("Detective Solis"), a detective with the City of Mesquite Police Department assigned to the Drug Enforcement Administration ("DEA") Dallas Office as a task force officer, testified he received information from a source-of-information regarding a large drug trafficking organization ("DTO") transporting fentanyl from Mexico into the United States. *See* Dkt. 9 at 3. Detective Solis testified the DTO was transporting the fentanyl from Mexico to Los Angeles and then transporting fentanyl through the Dallas-Fort Worth area to Atlanta and New York City. *See id.* Detective Solis, acting as an undercover officer, received the phone number for a contact in Mexico to source fentanyl pills, and the contact in Mexico advised Detective Solis that he would receive a phone call for a shipment of fentanyl. *See id.* Detective Solis testified he received a call from Defendant on February 9, 2023, regarding five thousand fentanyl pills. Detective Solis testified officers identified Defendant through a database search of the phone number used to contact Detective Solis. *See id.* Detective Solis arranged to meet with Defendant in Plano, Texas on February 10, 2023. *See id.* Detective Solis further testified he changed the meeting location on February 10, 2023, in coordination with the North Texas Criminal Interdiction Unit ("NTXCIU"). *See id.*

Detective Solis testified that Collin County Sheriff's Department Deputy Umphenour ("Deputy Umphenour"), assigned to NTXCIU, initiated a traffic stop on Defendant while Defendant was traveling to the arranged meeting location. *See id.* Detective Solis testified Defendant's fiancée, Jocelyn Salas ("Ms. Salas"), and Defendant's two-year old child were in the

2

vehicle during the traffic stop. *See id.* Detective Solis testified that Defendant gave verbal consent for a search of the vehicle. During a search of the vehicle, officers found a 1911 9mm firearm (the "Firearm"), with a round in the chamber, located in the glove compartment, and a shoe box in the backseat near the child containing approximately five thousand pills or approximately 560 grams of fentanyl. *See id.* Detective Solis and another officer later conducted an interview of Defendant and advised Defendant of his *Miranda* rights. *See id.* During the interview, Defendant informed Detective Solis that the Firearm was for his protection and he had been directed by Luis Avila, a close family friend of his mother, to make the deliveries. *See id.* Detective Solis further testified Defendant has had eight total border crossings into Mexico and has entered Mexico five times since 2019, including trips in 2022. *See id.*

During the February 21, 2023 hearing, Defendant's mother, Maria Claudia Reyes ("Ms. Reyes), testified as a potential third-party custodian. *See id.* at 4. Ms. Reyes testified she and Defendant's father, Miguel Reyes ("Mr. Reyes"), provided Defendant a house near their home. *See id.* Ms. Reyes testified Defendant lives with Ms. Salas and their two-year old son. *See id.* Ms. Reyes further testified Defendant has recently been living with Ms. Reyes and Mr. Reyes, as Defendant is remodeling his home. Ms. Reyes testified Defendant works for Mr. Reyes's construction company. *See id.* Ms. Reyes testified there were three firearms in her house and the firearms have been removed. *See id.* Ms. Reyes testified Luis Avila was employed by Mr. Reyes's construction company until approximately one year ago. *See id.* Ms. Reyes testified Defendant went to Mexico with Ms. Reyes and other family members in 2019 to visit Mexico City and Defendant's grandmother. *See id.* Ms. Reyes initially testified that she could not recall the purpose of Defendant's travel for Defendant's seven other border crossings into Mexico. *See id.* However, in response to the Court's questions, Ms. Reyes testified that she and Mr. Reyes traveled with

Defendant for all of Defendant's trips to Mexico. *See id.* The Court found Ms. Reyes was not an appropriate third-party custodian. *See id.* Mr. Reyes also testified as a potential third-party custodian. Mr. Reyes testified that when Defendant traveled to Mexico, he always did so with his family, including with Mr. Reyes. *See id.* Mr. Reyes testified Luis Avila was no longer employed by Mr. Reyes's construction company. *See id.* Mr. Reyes testified Defendant and Luis Avila worked together in Dallas on a utility project approximately more than one year ago. *See id.* The Court found Mr. Reyes was not an appropriate third-party custodian. *See id.*

On May 22, 2023, Defendant filed the Motion to Reopen Detention (Dkt. 42), wherein Defendant argues Detective Solis falsely testified that fentanyl was discussed in the phone conversations between Defendant and Detective Solis. *See id.* at 2–3. Defendant further asserts that he received discovery in March 2023, including thirteen phone calls and eleven text messages between Defendant and Detective Solis. *See id.* at 4. Defendant contends he obtained a licensed translator who translated the phone conversations between Defendant and Detective Solis, and that "[c]ontrary to the [G]overnment's presentation, their PowerPoint visual and [Detective Solis's] sworn testimony – '**Fentanyl**' in English or Spanish was <u>**NOT stated**</u> by [Defendant] and neither were the terms '**Pills**', '**M130**', and '**$8750**'." *Id.* at 5 (emphases in original). Defendant further asserts that following the February 21, 2023 hearing, Defendant obtained a police report showing thefts at Defendant's worksites, as well as a statement from Defendant's father and a homeowner "explaining the danger that sometimes occurs at job sites . . . ." *Id.* at 4. Defendant argues the "new evidence contravenes the [G]overnment's position as to the entirety of their allegations [and] cast[s] significant doubts on the veracity of [Detective Solis's] 'interpretation' and testimony" and "the [G]overnment's representations, their PowerPoint visual and [Detective Solis's]

'interpretations' of the two days of recorded phone conversations – were false and inaccurate." *Id.* at 6.

In support of the Motion to Reopen Detention (Dkt. 42), Defendant includes the following: an excerpted page from the Government's PowerPoint presentation presented at the February 21, 2023 hearing (Dkt. 42-1); Miguel Reyes's affidavit dated May 8, 2023 (Dkt. 42-2); a receipt for the purchase of the Firearm dated February 18, 2022 (Dkt. 42-3); a City of Dallas Police Department Incident Report dated August 30, 2022 (Dkt. 42-4); Daylon Jackson's affidavit dated May 8, 2023 (Dkt. 42-5); Michael Mahler's resume (Dkt. 42-6); a letter written by Michael Mahler to Defendant's counsel dated May 19, 2023; and Spanish to English translation transcripts for approximately six of thirteen telephone calls on February 9, 2023 and February 10, 2023, between Defendant and Detective Solis (the "Telephone Transcripts") (Dkt. 42-7).

On June 7, 2023, the Government filed a response (Dkt. 48) opposing the Motion to Reopen Detention (Dkt. 42). In the response (Dkt. 48), the Government argues Defendant failed to timely appeal the Detention Order (Dkt. 9). *See* Dkt. 48 at 6–7. The Government further argues the evidence presented by Defendant was not unknown to Defendant at the time of the hearing as Defendant "was a party to the phones with [Detective Solis] on February 9th and 10th, and he was aware of his purpose in carrying a loaded firearm at the time of the detention hearing." *Id.* at 13–14. The Government also argues the police reports and affidavits are not new evidence because "it was clearly evidence known to [Defendant] at the time of the hearing." *Id.* at 15. The Government argues "[e]ven if the Court did consider this as new evidence, this evidence does not support the revocation of the Court's detention order." Dkt. 48 at 15. The Government asserts the previous reasons for detention remain as Defendant is a flight risk due to his family in Mexico, his travel to Mexico, and his means to flee to Mexico. *See id.* at 9–10. The Government further argues the

nature and characteristics of the crime weigh in favor of detention because Defendant was trafficking five thousand fentanyl pills, possessed a loaded firearm with a round chambered, and Defendant brought his fiancée and his two-year old son to a drug sale. *See id.* at 10. On a similar basis, the Government argues Defendant's history and characteristics weigh in favor of detention and Defendant "poses a serious and ongoing risk to himself, [his fiancée], . . . their child, and the population at large." *Id.* at 13. Finally, the Government argues the weight of the evidence is strong and Defendant does not dispute that he was the one speaking in the telephone conversations with Detective Solis on February 9 and February 10, 2023, or that law enforcement found five thousand fentanyl pills in his car during the traffic stop on February 10, 2023. *See id.* at 11.

On June 8, 2023, Defendant filed a reply (Dkt. 50) arguing that "[i]t is irrebuttable and uncontested that the [G]overnment put forth and presented false and inaccurate sworn information to the Court at the detention hearing on 02/21/2023." *Id.* at 1. Defendant argues "interpreter translations refute the [G]overnment's position, are game changers, alter the case dynamic and allow for release from detention." *Id.* Defendant further argues the Motion to Reopen Detention (Dkt. 42) is not untimely as relevant discovery was received after the February 21, 2023 hearing and the Assistant United States Attorney has provided discovery late. *See id.* at 2.

On June 26, 2023, the Court held a hearing (Dkt. 56) on the Motion to Reopen Detention (Dkt. 42). At the June 26, 2023 hearing, the Court orally ordered the issue of detention be reopened on the basis that the Telephone Transcripts (Dkt. 42-7) of six conversations between Defendant and Detective Solis were not available to Defendant at the time of the initial February 21, 2023 hearing and these transcripts were material, as they went to the credibility of Detective Solis's

testimony at the February 21, 2023 hearing. *See* Dkt. 56.[2] Defendant called Michael Mahler ("Mr.

Mahler"), a licensed Spanish to English interpreter, to testify. *See id.* Mr. Mahler testified that the

words "fentanyl" or "fentanil", "8,750", or "pills" were never stated in the six telephone

conversations between Defendant and Detective Solis that Mr. Mahler has translated. *See id.* On

cross-examination, Mr. Mahler testified the word "taminas" that appeared unintelligible in the

transcripts likely was "vitaminas," i.e., vitamins. *See id.* Defendant also called Mr. Reyes to testify.

*See id.* Mr. Reyes testified that Defendant was staying at worksites overnight and Defendant was

looking to purchase a sandblaster. *See id.* On cross-examination, Mr. Reyes testified that when

Defendant was arrested on February 10, 2023, Defendant was traveling back from a worksite and

was looking to purchase a sandblaster. *See id.* The Government called Detective Solis to testify.

*See id.* Detective Solis testified Defendant contacted Detective Solis first and had done so in

response to Detective Solis's arrangements with a contact in Mexico for the purchase of fentanyl.

*See id.* Detective Solis further testified he understood the conversation as arranging the sale and

delivery of fentanyl, and that on February 10, 2023, Detective Solis directed Defendant to a second

---

[2] The Court notes that other alleged "new" and "material" evidence offered in support of the Motion to Reopen Detention (Dkt. 42) appears to have been to known to Defendant or could have been known to Defendant at the time of the February 21, 2023 detention hearing, such as Miguel Reyes's affidavit dated May 8, 2023 (Dkt. 42-2); the receipt for the purchase of the Firearm dated February 18, 2022 (Dkt. 42-3); and a City of Dallas Police Department Incident Report dated August 30, 2022 (Dkt. 42-4). "Courts interpreting 'new and material information' for purposes of § 3142(f) require 'truly changed circumstances, something unexpected, or a significant event,' and courts have interpreted the requirements of this provision strictly" such that "defendant cannot re-open detention to present evidence that he could have investigated before the detention hearing." *United States v. Jacob*, No. CR 21-31, 2023 WL 2867324, at *5 (E.D. La. Apr. 10, 2023) (citations omitted); *see also United States v. Munguia*, No. 3:19-cr-191-B, 2020 WL 1471741, at *3 (N.D. Tex. Mar. 26, 2020) (finding courts have interpreted § "3142(f)'s 'not known to the movant at the time of the hearing' 'language to mean not just actual knowledge, but also constructive knowledge, i.e., knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person.'"); *United States v. Martin*, No. 13-00466 JSW (KAW), 2015 WL 1738362, at *2 (N.D. Cal. Apr. 13, 2015) ("[T]he purpose of the statute . . . is to allow parties to present unknown information that increases the chances the defendant appears for their criminal hearing, or decrease the danger the defendant poses to an individual or the community as a whole."); *accord Munguia*, 2020 WL 1471741, at *2.

Regardless that several of Defendant's Exhibits do not appear to be "new" or at times "material", the Court explains throughout this Opinion and Order why such evidence does not change the conclusion that no condition or combination of conditions of release will reasonably assure the safety of the community and assure Defendant's appearance as required.

location to deliver the fentanyl. *See id.* On cross-examination, Detective Solis testified some of the arrangements for the sale of fentanyl were not made directly with Defendant and that the calculation for the $8,750 was based on the sale of five thousand fentanyl pills priced at $1.75 each. *See id.* Detective Solis further testified that drug trafficking organizations commonly use coded language to conduct drug sales. *See id.*

During the June 26, 2023 hearing, Defendant offered without objection and the Court admitted: Defendant's previous exhibits included in support of his Motion to Reopen Detention (Dkt. 42-1–42-7) as Defense Exhibits 1 through 7; text messages dated February 6 and 7, 2023 between Defendant and two individuals on a social media application regarding the sale of a sandblaster, as Defense Exhibit 10 (Dkt. 57-2); and a photograph of a cardboard box package from Luis Avila, 17661 Mojave St, Hesperia, California 92345 to Maria Avila, 205 Melrose Lane, Lancaster, Texas 75146, as Defense Exhibit 11 (Dkt. 57-2). *See* Dkt. 56.

## II.   LEGAL STANDARD

"The Bail Reform Act provides that a person shall be released pending trial unless a judge finds that 'no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *United States v. Villaurrutia*, 850 F. App'x 330, 331 (5th Cir. 2021) (per curiam) (quoting 18 U.S.C. § 3142(e)). A judicial officer may order a defendant detained pending trial upon satisfying two prerequisites. First, the officer must hold a hearing pursuant to a circumstance listed in 18 U.S.C. § 3142(f). *See United States v. Byrd*, 969 F.2d 106, 109–10 (5th Cir. 1992). Only criminal defendants whose cases involve one or more of the following circumstances may be detained pending trial:

- a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

- an offense for which the maximum sentence is life imprisonment or death;

- an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et seq.*), the Controlled Substances Import and Export Act (21 U.S.C. § 951 *et seq.*), or chapter 705 of title 46;

- any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more state or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to federal jurisdiction had existed, or a combination of such offenses;

- any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive, or any other dangerous weapon, or involves a failure to register under 18 U.S.C. § 2250;

- any offense if there is a serious risk that such person will flee; or

- any offense if there is a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

18 U.S.C. § 3142(f).

Second, after a hearing, the judicial officer must determine whether the United States has shown by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure the appearance of the person," or by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e)(1), (f)(2). Section 3142(g) provides that a court shall consider the following factors in determining whether a person poses a flight risk or a danger to the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's history and characteristics, including, among other things, his family ties, length of residence in the community, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and

seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

If, based on the foregoing factors, the judicial officer finds there are no conditions that would "reasonably assure the appearance of the person as required and the safety of any other person and the community," the judicial officer shall order the criminal defendant detained pending trial. 18 U.S.C. § 3142(e); *see also United States v. Okhumale*, 813 F. App'x 936, 939 (5th Cir. 2020) (per curiam) (holding pretrial detention requires "the presence of one of the circumstances outlined in § 3142(f) *and* a determination under § 3142(e) that . . .  no conditions imposed could either assure the appearance of the defendant or the safety of the defendant and community" (citing *Byrd*, 969 F.2d at 109–10)).

Under the Bail Reform Act, the existence of probable cause to believe the defendant committed a crime in violation of 21 U.S.C. § 801, *et seq.*, creates a rebuttable presumption that no conditions of release exist that would reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e). "The rebuttable presumption of § 3142(e) shifts to the defendant only the burden of producing rebutting evidence, not the burden of persuasion; however, the mere production of evidence does not completely rebut the presumption." *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992) (citing *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989)). Thus, "[i]n making its ultimate determination, [courts] may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society." *Id.* (citing *Hare*, 873 F.2d at 798–99).

## III.    ANALYSIS

The Court finds, based on the evidence presented at the February 21, 2023 hearing (Dkt. 7) and the June 26, 2023 hearing (Dkt. 56), there are no conditions or combination of conditions

of release that will reasonably assure the safety of the community and assure Defendant's appearance as required.

Defendant asserts Detective Solis was not truthful regarding his communications with Defendant. Notably, however, Defendant does not address the Government's evidence that five thousand fentanyl pills were found in the backseat of Defendant's vehicle. The Court agrees with Defendant that Detective Solis's earlier testimony is not accurate to the extent Detective Solis asserted Defendant explicitly stated "fentanyl" or "fentanil" in his phone conversations with Defendant.[3] But there is more than sufficient evidence that supports finding Defendant was trafficking fentanyl, including Defendant's own offered Telephone Transcripts (Dkt. 42-7) and statements to law enforcement.

Detective Solis testified that following his communications with a contact in Mexico, he was contacted by Defendant, during which Detective Solis arranged the purchase of fentanyl. Detective Solis further testified at the February 21, 2023 hearing that Defendant was the one to initiate contact with Detective Solis regarding the drug sale and that law enforcement identified Defendant by tracing his phone number. Defendant offered and the Court admitted the Telephone Transcripts (Dkt. 42-7). *See* Dkt. 56. In the Telephone Transcripts (Dkt. 42-7), Defendant is revealed in the conversation on February 9, 2023 to say the following:[4]

Detective Solis: Hello,

[Cough]

Detective Solis: Hello

---

[3] At the June 26, 2023 hearing (Dkt. 56), the parties referenced text messages between Detective Solis and Defendant. However, neither party offered the text messages as evidence.

[4] The above conversation is translated from Spanish to English by Defendant's translator. *See* Dkt. 42-7. Defendant appears in the conversation to be "El Guero's Comrade" and Detective Solis to be "Tavo". *Id.* at 3. "El Guero" is translated in the transcript as "The White Dude" and is denoted as a nickname. *See* Dkt. 42-7 at 4.

Defendant: Yes, Tavo.

Detective Solis: Yes, yes, he's speaking.

Defendant: Yes, I'm . . . the comrade of uh, El Guero.

Detective Solis: Uh-huh.

Defendant: Ah . . . He said that . . . so that the, so the . . . what's it called? In order for us to see one another around there to give you the, these . . .[unintelligible] . . . taminas.

Detective Solis: Yes, yes. How many do you always have?

Defendant: Ah . . Listen, I don't know. I'm barely going to pick . . . . Uh . . . what's it called? Here I'm going to get them between . . . . Uhm . . . I'm not sure.

Detective Solis: You're not sure how many they are?

Defendant: Uh-uh. Let me ask him. Wait for me.

Dkt. 42-7 at 4–5. Defendant then appears to call Detective Solis back and the two have the following conversation in relevant part:

Detective Solis: Yes, hello, hello, hello.

Defendant: Yes. He said there are five thousand.

Detective Solis: Okay. Uh . . . Ah when can you deliver them?

Defendant: Now.

Detective Solis: No man, right now is too late to be moving that.

Defendant: Say what?

Detective Solis: Right now it is very late to be moving that.

Defendant: Uh . . .

. . . .

Detective Solis: Right now is too dark, rather tomorrow, around 1, 1:30. Eh . .

Defendant: Okay.

Detective Solis: We'll agree, we'll agree early.

Defendant: Okay.

Detective Solis: Is that good?

Defendant: That's good. Yes, it's fine.

Detective Solis: A . . . alright.

Defendant: Alright, thank you.

*Id.* at 5–8. A review of the later phone calls between Defendant and Detective Solis reveal discussions between Defendant and Detective Solis regarding when and where the two will meet for the delivery or sale of "five thousand", Detective Solis directing and Defendant agreeing to move to a second location, and Defendant informing Detective Solis that Defendant is in a white Ford vehicle. *See id.* at 8–13. This evidence, rather than undermining, bolsters Detective Solis's statement that he negotiated a drug sale with Defendant for five thousand fentanyl pills.

Furthermore, at the February 21, 2023 hearing, Defendant suggested that the drug sale was related to "vitaminas," (Spanish for "vitamins"). *See* Dkt. 43 at 13–14 ("And I followed up with that and I asked you if the word was vitamins that you were just confused . . . ."). But as Detective Solis testified, drug traffickers use coded language, and "vitaminas" appears to be coded language for fentanyl. True, Detective Solis and Defendant never explicitly stated "fentanyl" or "fentanil," and Detective Solis was incorrect in his earlier testimony regarding that fact. But the conversation and its context make clear Defendant agreed to deliver fentanyl to Detective Solis. Defendant offered to deliver "five thousand", arranged meeting locations with Detective Solis, and was found with five thousand fentanyl pills in the backseat of his vehicle while on the way to meet Detective Solis.

The Government has provided sufficient evidence to solve the coded language of "five thousand"—Defendant agreed to and was delivering five thousand fentanyl pills. Thus, the Telephone Transcripts (Dkt. 42-7) support Detective Solis's representation that Defendant was trafficking fentanyl, and the Court finds the Government has shown that Defendant is a danger to the community.

The Court next turns to Defendant's alternative explanations for the possession of the Firearm and the purpose of the February 10, 2023 trip, and concludes these explanations do not change the Court's finding. Defendant avers the Firearm was purchased due to thefts at various worksites and the Firearm was purchased lawfully. But a firearm purchased lawfully and for an allegedly lawful purpose may later be used for an illegal purpose. The Government has presented testimony that the Firearm, with a round in the chamber, was found in the front seat of Defendant's vehicle, easily accessible to Defendant while he was traveling to meet Detective Solis, with his fiancée and two-year old son in the car, to conduct the sale of five thousand fentanyl pills. Again, the Court concludes this evidence weighs in favor of finding Defendant is a danger to the community.

As to Defendant's alternative explanation for the February 10, 2023 trip—that Defendant was traveling to purchase a sandblaster—this explanation is critically undermined by the Telephone Transcripts (Dkt. 42-7). As discussed above, Detective Solis and Defendant discussed in several telephone conversations the time and location of the delivery or sale of "five thousand", Defendant agreed to change the meeting location, and Defendant identified his own white Ford vehicle for Detective Solis in preparation for the meeting. *See* Dkt. 42-7 at 9–13. During their conversations, Defendant and Detective Solis discuss "vitaminas" and the sale or delivery of "five thousand"; a sandblaster is never discussed. Additionally, Defendant further told law enforcement

in a post-*Miranda* interview that he believed he was delivering vitamins for Luis Avila. Thus, Defendant's assertion that he was on his way to purchase a sandblaster—a story he told Deputy Umphenour during the traffic stop—is undermined by the Telephone Transcripts (Dkt. 47-7) and his own statements to law enforcement. Furthermore, while Defendant's father testified at the June 26, 2023 hearing that Defendant was looking to purchase a sandblaster and was traveling from a worksite at the time of the February 10, 2023 arrest, the Court finds based on the Telephone Transcripts (Dkt. 47-7) and Defendant's post-*Miranda* interview that this testimony is not credible. Setting aside that Defendant's fiancée separately told law enforcement that she and Defendant were traveling back home from a friend's house at the time of the arrest on February 10, 2023, Defendant's *own* stories are contradictory.

Finally, Defendant avers the excerpted section of the Government's PowerPoint presentation (Dkt. 42-1) presented at the February 21, 2023 hearing (Dkt. 7) was false as the Government "argued that Defendant specifically and in the first person arranged the sale of approximately 5,000 fentanyl pills for approximately **$8,750** in U.S. currency and that all actions occurred during 02/09/2023 and 02/10/2023." Dkt. 42 at 3 (emphasis in original). In reviewing the excerpted PowerPoint presentation page (Dkt. 42-1), it states that "[Detective] Solis, while acting in an undercover capacity, received a telephone call from the user of 972-684-1864 (later identified as [Defendant]) and arranged the purchase of approximately 5,000 fentanyl pills for approximately $8,750 U.S. currency." Dkt. 42-1. First, the PowerPoint presentation (Dkt. 42-1) states Detective Solis received the call and arranged the purchase with Defendant, which accurately reflects the telephone conversations. While Defendant asserts these conversations do not reflect that Defendant arranged the sale in the first-person, Defendant contacted Detective Solis first, stated the quantity that could be delivered was "five thousand," and negotiated a time and place to make

the delivery. Defendant does not dispute he was the person speaking with Detective Solis on the February 9 and February 10, 2023 telephone calls. Second, while Defendant asserts $8,750 was not discussed, Detective Solis testified at the February 21, 2023 hearing that $8,750 was a calculation for five thousand pills at a purchase price of $1.75 per pill and Detective Solis confirmed for Defendant's counsel that Defendant did not state $8,750 in a phone conversation. *See* Dkt. 43 at 12 ("It's for 5,000 pills, sir, at $1.75. 1.75 times 5,000 is 8750. That's how the number came up, sir."). At the June 26, 2023 hearing, Detective Solis testified that he calculated the $8,750 for the sale of five thousand fentanyl pills in this manner. *See* Dkt. 56. The Court cannot conclude that Detective Solis's testimony is false, as it appears consistent with his earlier testimony at the February 21, 2023 hearing. To the extent Detective Solis's answers at the February 21, 2023 hearing caused confusion, upon the Court's review of the transcript, the statements that he calculated the $8,750 based on the delivery of five thousand fentanyl pills at $1.75 per pill are consistent.

Ultimately, the Court concludes the Government has met its burden of persuasion and there is no condition or combination of conditions of release that would assure the safety of the community and reasonably assure Defendant's appearance at trial.

## V.  CONCLUSION

For the reasons stated herein, the Court finds Defendant should remain **DETAINED** pending trial.

**So ORDERED and SIGNED this 11th day of July, 2023.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE

16